IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>$49,805.00 IN UNITED STATES CURRENCY,<br><br>DEFENDANT. | Civil Action No. |

### VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW plaintiff United States of America, by Ryan K. Buchanan, United States Attorney, and Norman L. Barnett, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

### NATURE OF THE ACTION

1. This is a civil forfeiture action against $49,805.00 in United States currency ("Defendant Currency") that the U.S. Drug Enforcement Administration ("DEA") seized from Richard Dudley III at Hartfield-Jackson Atlanta International Airport on or about July 6, 2022 following a consensual encounter between DEA agents and Dudley while Dudley was waiting to board Delta Flight 345 to Los

1

Angeles, California.

2. Defendant Currency is presently being maintained by the United States Marshals Service in a secure account.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. This Court has in rem jurisdiction over the Defendant Currency pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

## BASIS FOR FORFEITURE

### Relevant Statutes

6. The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841.

7. The Defendant Currency also is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of a "specified unlawful activity."

8. 18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

9. 18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

## Factual Background

*Seizure of the Defendant Currency*

10. On or about July 6, 2022, DEA task force officers, while working to identify individuals possessing illegal drugs and/or large amounts of money, established surveillance near Gate A7 at Hartsfield-Jackson International Airport to conduct random consensual encounters of passengers boarding Delta Flight 345, to Los Angeles, California.

11. As passengers began boarding the flight, TFOs Michael Reddick and Zachariah Zazverskey observed a man later identified as Richard Dudley III step out of the line and sit at a gate next to Gate A7.

12. TFOs observed Dudley looking over his shoulder every few seconds.

13. Based on their training and experience, the TFOs believed Dudley's

behavior indicated that he was nervous.

14. Dudley stood up and returned to Gate A7 to board the flight.

15. TFOs approached Dudley when he returned to Gate A7.

16. The TFOs identified themselves as law enforcement officers and asked Dudley if he would speak with them.

17. Dudley responded, "yes."

18. TFO Reddick asked Dudley for his identification.

19. In response, Dudley provided a Maryland identification card.

20. TFO Reddick explained to Dudley that the TFOs were attempting to identify individuals who possess illegal drugs and/or drug proceeds.

21. TFO Reddick also asked Dudley if he was carrying any type of controlled substances, such as marijuana, cocaine, heroin, ecstasy and/or prescription drugs.

22. Dudley responded, "no."

23. TFO Reddick then asked Dudley if he was carrying any large sums of United States currency that exceeded five thousand dollars.

24. Dudley replied, "yes."

25. Dudley initially said he was carrying $10,000.00.

26. Dudley then said he was carrying $30,000.00.

27. TFO Reddick asked Dudley if he would consent to a search of his backpack.

28. Dudley said, "yes."

29. TFO Zazverskey began searching Dudley's backpack.

30. In the backpack, Zazverskey located multiple bundles of U.S. Currency rubber-banded together and wrapped in clothing items.

31. The U.S. Currency located in the backpack was later identified as Defendant Currency.

32. Based on the training and experience of law enforcement officers involved in this investigation, the packaging and quantity of Defendant Currency are consistent with money involved in illegal drug transactions.

33. TFO Zazverskey asked Dudley if the Defendant Currency was the $30,000.00 he claimed to be traveling with, to which Dudley replied, "yes."

34. During the search of Dudley's backpack, TFO Zazverskey noticed a strong odor consistent with marijuana coming from the backpack.

35. TFO asked Dudley if he had ever possessed drugs in the backpack.

36. Dudley replied, "I don't think so."

37. TFO Reddick asked Dudley why he was going to L.A. with the money.

38. In response, Dudley said he was going to L.A. to shop and get more sneakers to sell through his business.

39. When TFO Reddick asked Dudley when he purchased his plane ticket, Dudley said he purchased it the previous day.

40. TFO Reddick also asked Dudley whether he had a return flight.

41. Dudley said he did not have a return flight.

42. When TFO Reddick asked Dudley where he was staying in L.A., Dudley said he was staying in a hotel in downtown L.A.

43. TFO Reddick asked Dudley what he did for work.

44. Dudley said he sold sneakers on Instagram.

45. When asked how customers pay him for the sneakers, Dudley said they pay him through Cash App and cash.

46. TFO Reddick asked Dudley if he could provide proof of where the money he possessed came from.

47. In response, Dudley showed TFOs a Bank of America checking account on his phone that had an account balance of $54.00 and different withdrawal amounts.

48. The withdrawal amounts displayed on Dudley's phone did not equal the $30,000.00 Dudley claimed to possess.

49. TFO Reddick asked Dudley if he had an LLC for his business.

50. In response, Dudley said no.

51. Dudley denied ever being arrested.

52. TFO Reddick explained to Dudley that DEA would be seizing Defendant Currency because Dudley could not provide where the money came from.

53. Dudley then said he would not be boarding his flight to L.A. and would return to Maryland if the Defendant Currency was seized.

54. Dudley also said, "I'm going to kill myself, y'all taking my money."

55. TFO Reddick placed the money from Dudley's backpack in a self-sealing evidence envelope (SSEE) in Dudley's presence.

56. TFO Zazverskey witnessed Reddick seal the SSEE containing Defendant Currency.

57. Dudley refused to verify his personal information, sign the DEA-12 receipt, or sign the SSEE in which Defendant Currency was deposited.

58. Dudley was provided a copy of the DEA-12 receipt.

59. DEA seized the Defendant Currency.

60. A subsequent official count determined the total amount seized as $49,805.00.

61. Defendant Currency consisted of various denominations of U.S. Currency, including:

- 427 $100.00 bills,
- 97 $50.00 bills,
- 112 $20.00 bills,
- one $10.00 bill, and
- one $5.00 bill.

62. Dudley was not arrested.

63. On that same date, "Hans," a certified narcotics police dog, conducted an open-air sniff on the Defendant Currency with his handler Georgia State Patrol Trooper Eddie Barrett Smith.

64. Hans gave a positive alert as to the odor of narcotics on the Defendant Currency.

*Administrative Proceedings*

65. DEA began administrative forfeiture proceedings against the Defendant Currency and sent notice to Dudley.

66. On or about October 4, 2022, the DEA received an administrative claim from Dudley where he asserted ownership of the Defendant Currency. After receiving the claim, the DEA referred this matter to the United States Attorney's

Office for judicial forfeiture proceedings, as required by 18 U.S.C. § 983(a)(3)(A).

## CONCLUSION

67.     Based on the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of 21 U.S.C. § 841.

68.     The Defendant Currency is also subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

WHEREFORE, the United States prays:

(1) that the Court forfeit the Defendant Currency to the United States of America;

(2) that the Court award Plaintiff the costs of this action; and

(3) that Plaintiff have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 3rd day of January 2023.

        Respectfully submitted,

        RYAN K. BUCHANAN
          *United States Attorney*
          600 U.S. Courthouse
          75 Ted Turner Drive SW
          Atlanta, GA 30303
          (404) 581-6000   fax (404) 581-6181

/s/NORMAN L. BARNETT
    *Assistant United States Attorney*
  Georgia Bar No. 153292
  norman.barnett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

    PLAINTIFF,

  v.

$49,805.00 IN UNITED STATES CURRENCY,

    DEFENDANT.

Civil Action No.

**VERIFICATION OF COMPLAINT FOR FORFEITURE**

    I, Zachariah Zazverskey, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

    This __3rd__ day of January 2023.

                  Zachariah Zazverskey
                  Zachariah Zazverskey
                  Task Force Officer
                  Drug Enforcement Administration